UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

D-2 WASEEM ALAM,

    Defendant.

Case No.: 15-cr-20351
Hon. Sean F. Cox

---

**DEFENDANT'S RENEWED EMERGENCY MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)**

By and through his undersigned counsel appointed under the Criminal Justice Act ("CJA"), Defendant Waseem Alam files his instant Renewed Emergency Motion for Compassionate Release pursuant to 18 U.S.C. § 3582. In further support of his motion, Defendant submits the accompanying brief. The government does not concur as to the relief requested herein.

## **QUESTION PRESENTED**

I. Should this Court find that there are "extraordinary and compelling circumstances" under 18 U.S.C. § 3582 so as to order the release from custody of Mr. Alam, a 64 year old inmate who suffers from, among other things, diabetes, coronary artery disease, and hypertension where Defendant's medical conditions render him highly susceptible to the deadly COVID-19 disease and where he is currently housed in a BOP facility with dozens of confirmed cases of coronavirus and several inmate deaths?

## CONTROLLING AUTHORITY

18 U.S.C. §3582

# BRIEF IN SUPPORT OF EMERGENCY MOTION FOR INDICATIVE RULING REGARDING COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582

## I. Background Facts

Defendant Dr. Waseem Alam is a 64-year old inmate currently serving a 101-month sentence following his March 22, 2016 guilty plea to conspiracy to commit health care fraud and related charges. See Dkt # 149. Mr. Alam is currently housed at FCI Milan (awaiting an evidentiary hearing on his motion to vacate sentence). With consideration of the First Step Act, Defendant Alam believes he has served approximately 75% of his sentence such that his release date may be November 2022.[1]

### A. Defendant's First Request and Motion for Compassionate Release

On March 25, 2020, the undersigned counsel sent a written request (via email, fax, and first-class post mail) to the Warden of FCI Milan requesting that he recommend compassionate release for Mr. Alam given his serious medical conditions and the spread of COVID-19 (**Exhibit A**). To date, neither Defendant nor his counsel has received any response from the government as to Alam's first request for release.

---

[1] The BOP website shows Mr. Alam's current release date as July 2024; however, Mr. Alam believes he may be entitled to a reduction of his sentence under the First Step Act which might make him eligible for release in November 2022.

1

On April 4, 2020, Defendant filed with this Court his first Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c), and on April 8, 2020 this Court denied the petition finding that Defendant's failure to exhaust his administrative remedies deprived this Court of jurisdiction to consider the merits of Defendant's request or grant him relief. Dkt # 334 (Order Denying Motion For Compassionate Release).

On April 9, 2020, Alam filed with the Sixth Circuit an emergency appeal of this Court's denial of his motion challenging this Court's determination that exhaustion was mandatory. The Sixth Circuit expedited Defendant's appeal which is now fully briefed and awaiting a decision by the Sixth Circuit.

**B. Defendant's Second Request to BOP for Compassionate Release**

On April 15, 2020, Defendant submitted a second request to the BOP asking, again, that he be considered for compassionate release given his age and serious medical conditions as well as additional factors showing that he poses no danger if released to home confinement (**Exhibit B**).

On or about April 17, 2020, Defendant received a Memorandum from the Warden of Milan setting forth the BOP's "prioritization of home confinement requests" listing the following factors to be considered by BOP: primary offense is not violent; primary offense is not sex offense; primary offense is not terrorism; no detainer/pending charges/warrants; no incident reports in the past 12 months; your

2

pattern risk score is minimum (FSA Risk Recidivism Level); your custody level is minimum or low (**Exhibit C**, Memorandum dated April 17, 2020)

Despite meeting all of the BOP requirement coupled with the fact that Alam suffers serious medical conditions that put him at extremely high risk from the COVID-19 disease, the Warden denied Alam's request for compassionate release in a written response dated April 30, 2020 (**Exhibit D**). In his response, the Warden indicated that Defendant's "medical condition, with or without the spread of the COVID-19 virus, does not meet the criteria outlined [above]." (**Exhibit D**).

### C. Defendant's Instant Motion for Compassionate Release

Despite the fact that Defendant has appealed this Court's prior ruling denying his motion for compassionate release, and because his appeal remains pending, Defendant asserts that this Court has jurisdiction to grant the relief requested herein.

Generally, the filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *United States v. Carman*, 933 F.3d 614, 617 (6th Cir. 2019); *see also United States v. Holloway*, 740 F.2d 1373, 1382 (6th Cir. 1984)). A district court may still exercise its jurisdiction over matters unrelated to the merits of the appeal. *Taylor v. KeyCorp*, 680 F.3d 609, 616 n.8 (6th Cir. 2012). Defendant believes such is the case here.

Defendant's pending appeal involves the question of whether exhaustion is mandatory under the statute. Defendant's instant motion is being brought after the lapse of 30 days from the date of Defendant's second request for release was submitted to – and denied by – the Warden. As such, the question before the Sixth Circuit deals strictly with exhaustion which is not at issue herein. For this reason, this Court's decision on the merits of Defendant's request would not interfere with the issue pending before the Sixth Circuit.

Assuming, *arguendo*, that the Government challenges this Court's jurisdiction to consider Defendant's instant motion given the pendency of his appeal, this Court can still issue an indicative ruling that it would grant Defendant's motion or that it raises a substantial issue under Fed. R. Crim. P. 37(a)(3). In such a case, Defendant can request a remand from the Sixth Circuit so as to effectuate a favorable indicative ruling from this Court favorable. *See* Fed. R. App. P. 12.1.

### D. Defendant presents "extraordinary and compelling" circumstances to warrant compassionate release under 18 U.S.C. § 3582(c).

Under § 3582(c)(1)(A)(i), this Court has the authority to release Defendant premised upon "extraordinary and compelling reasons." While there are no clear guidelines for establishing such grounds, courts have applied this standard to COVID-related requests consistent with the CDC guidelines while accounting for both individual and institutional risk factors of which Defendant satisfies both.

As documented in his pre-sentence report, Defendant suffers from the following medical conditions: diabetes (poorly controlled), coronary artery disease, recurring joint pain, obesity, severe anxiety disorder, fatigue, bladder control issues, benign prostatic hyperplasia (an enlarged prostate), obstructive sleep apnea, osteoarthritis, peripheral neuropathy, depression, cervical radiculopathy (nerve compression in back causing pain), nephrolithiasis (kidney stones), and hypertension. Mr. Alam underwent a cardiac catheter, angioplasty, and stent placement on April 17, 2009 at Beaumont Hospital. See PSR ¶ 44, pg. 13.

Mr. Alam's health conditions – particularly diabetes, coronary artery disease, and hypertension – render Mr. Alam at extremely high risk for COVID-19. As the CDC explains, those at the highest risk of severe illness from COVID-19 are:

- people who are 65 years and older;
- people with poorly controlled underlying medical conditions;
- obesity;
- people who live in a nursing home or long-term care facility;
- people with diabetes;
- people with kidney disease;

Center for Disease Control and Prevention, "People Who Are at Higher Risk for Severe Illness" https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited 5/27/20).

5

Defendant Alam falls into most of these categories: he is just a couple months shy of turning 65 years old, he is obese, he suffers from (poorly controlled) diabetes; he is confined in a prison facility where the virus spreads quickly and easily. Of his particular risk factors, it should be emphasized that Alam's poorly controlled diabetes is perhaps the most dangerous of his risk factors.

As Dr. Jaimie Meyer, Assistant Professor of Medicine at Yale School of Medicine and Assistant Clinical Professor of Nursing at Yale School of Nursing in New Haven, Connecticut, notes in her attached declaration:

> Most people (80%) who become infected with COVID-19 will develop a mild upper respiratory infection but emerging data from China suggests serious illness occurs in up to 16% of cases, including death. Serious illness and death is most common among people with underlying chronic health conditions, like heart disease, lung disease, liver disease, and diabetes, and older age.

**(Exhibit E**, Declaration of Dr. Jaimie Meyer, ¶ 21, pg. 5). As confirmed by his presentence report, Defendant's medical conditions pose heightened risks of serious illness, including death, resulting from COVID-19 such that his instant request is both 'extraordinary' and 'compelling.' At present, there have been more than 100 confirmed cases of the virus in FCI Milan between inmates and staff. Three inmates from FCI Milan have died from the virus.

Under substantially analogous facts, Chief Judge Hood recently granted compassionate release to inmate housed at Milan with markedly similar

individualized risk factors as those presented by Defendant Alam. *See United States v. Saad*, No. 16-20197, 2020 WL 2065476 (E.D. Mich. Apr. 29, 2020)

In *Saad*, the Defendant had served 33 months of a 72-month sentence for a non-violent drug offense. The defendant was 71 years old and housed at FCI Milan which has several confirmed cases of COVID-19. He also suffered from a host of medical conditions, including kidney disease, hypertension, pulmonary hypertension, sleep apnea, shingles, diabetes, and back problems. And like Alam, he also had heart surgery. Given these factors, the district court concluded that this combination of serious medical conditions plus the time he had served on a non-violent offense justified reducing his sentence and release to home confinement. Defendant Alam asks that this Court grant him the same relief as the court granted in *Saad*.

As the Court is no doubt aware, we are living now in extraordinary and dangerous times. The spread of the Covid-19 virus across our state and country threatens us with unprecedented dangers. We have been told by the authorities to stay home, stay safe, and not be closer than six feet to anyone. Older persons, persons with weakened immune systems, and those with underlying health problems like Alam need to take ever greater precautions because of the dangerous aspects of this particular virus.

7

The situation facing Mr. Alam is dire and poses both Eighth Amendment and Due Process concerns. Should Mr. Alam not be released to home confinement, he will likely be exposed to a life-threatening virus. This would amount to cruel and unusual punishment that need not be inflicted upon a non-violent, non-dangerous, advanced-aged person with severe medical conditions.

For the foregoing reasons, Defendant respectfully requests that the Court issue an Order for immediate compassionate release and/or reduction in his sentence. Given these unprecedented circumstances, the Court could certainly fashion appropriate restrictions on Alam's release and/or home confinement. Mr. Alam's wife and children live in the metro-Detroit area and stand ready and willing to provide the shelter and support necessary to keep Mr. Alam safe.

There is (and never has been) any indication that Mr. Alam poses any harm or threat to the public. To the contrary, Defendant was placed on community security level and regularly served as a driver at the Hazelton Camp before he was brought to FCI Milan to await a hearing on his pending motion to vacate sentence under 28 U.S.C. § 2255. There are absolutely no facts to suggest that Defendant poses any threat to the public upon his release. At the same time, his release would ease the burden and strain on valuable BOP resources and staffing as this pandemic continues to stretch across our communities.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth herein, the Court should find that there are "extraordinary and compelling" circumstances so as to justify Defendant Alam's immediate compassionate release subject to whatever appropriate conditions the Court deems necessary.

        Respectfully submitted,

        LAW OFFICE OF MICHAEL R. DEZSI,  PLLC

Dated:  May 27, 2020    */s/Michael R. Dezsi*
        CJA Counsel for Defendant Alam
        615 Griswold St., Suite 1410
        Detroit, MI  48226
        (313) 879-1206
        mdezsi@dezsilaw.com
        P64530

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of May 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

        */s/ Michael Dezsi*
        Law Office of Michael R. Dezsi, PLLC
        615 Griswold St, Suite 1410
        Detroit, MI 48226
        mdezsi@dezsilaw.com
        P64530