# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: June 02, 2020

Mr. Michael R. Dezsi
615 Griswold Street
Suite 1410
Detroit, MI 48226

Mr. Andrew Goetz
United States Attorney's Office
211 W. Fort Street
Suite 2001
Detroit, MI 48226

Ms. Claire Sobczak
U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, DC 20005

        Re: Case No. 20-1298, *USA v. Waseem Alam*
            Originating Case No. : 2:15-cr-20351-2

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                         Yours very truly,

                         Deborah S. Hunt, Clerk

                         Cathryn Lovely
                         Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0171p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | | |
|  | *Plaintiff-Appellee*, | |
|  | | No. 20-1298 |
| *v.* | | |
| WASEEM ALAM, | | |
|  | *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cr-20351-2—Sean F. Cox, District Judge.

Decided and Filed: June 2, 2020

Before: SUTTON, COOK, and MURPHY, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Michael R. Dezsi, LAW OFFICE OF MICHAEL R. DEZSI, PLLC, Detroit, Michigan, for Appellant. Andrew Goetz, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

**OPINION**

_____

SUTTON, Circuit Judge. Like many Americans in poor health, 64-year-old Waseem Alam has legitimate fears about the health risks created by the COVID-19 pandemic. And like many inmates, he has ample reason to fear that a prison exacerbates those risks. But when Alam moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A), he failed to invoke all of the options for obtaining relief from the prison. Alam asks us to overlook that reality by finding the

requirement non-mandatory or by fashioning an exception of our own. But because this exhaustion requirement serves valuable purposes (there is no other way to ensure an orderly processing of applications for early release) and because it is mandatory (there is no exception for some compassionate-release requests over others), we must enforce it. We affirm the district court's dismissal of Alam's request without prejudice to filing a new one.

In 2016, Alam pleaded guilty to conspiracy to commit health care and wire fraud for his role in a roughly $8,000,000 Medicare kickback scheme. He received a 101-month sentence and has served about half of it. Alam suffers from obesity, poorly controlled diabetes, sleep apnea, and coronary artery disease. And he has kidney stones and bladder issues.

On March 25, Alam sent a letter to the prison warden requesting compassionate release. But he didn't wait for a response. Ten days later, on April 4, Alam moved for emergency relief in federal court. The government pointed out that Alam had not complied with the compassionate-release statute's administrative exhaustion requirement, 18 U.S.C. § 3582(c)(1)(A). The district court responded that the requirement was obligatory and dismissed Alam's claims without prejudice. Alam appealed.

By statute, a federal court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But that rule comes with a few exceptions, one of which permits compassionate release. The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. *Id.* § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the [prisoner]'s facility, whichever is earlier." *Id*. After "considering the factors set forth in section 3553(a)," a court may reduce the prisoner's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" or if the "[prisoner] is at least 70 years of age," has "served at least 30 years," and meets certain other conditions. *Id.*

Alam seeks compassionate release under § 3582(c)(1)(A). But he can't square that request with the terms of the statute. The Director of the Bureau of Prisons did not move for

compassionate release. And Alam has not exhausted his administrative appeals because he waited just 10 days after the warden's receipt of his request to file his motion in federal court, not the required 30 days.

That leaves two questions. Does Alam's failure to satisfy the § 3582(c)(1)(A) administrative exhaustion requirement deprive federal courts of subject-matter jurisdiction to hear his case? If not, may we excuse Alam's failure to satisfy that requirement over the government's timely objections?

Alam's failure to satisfy this administrative exhaustion requirement does not deprive us of subject-matter jurisdiction. The Supreme Court has worked over the last decade or so to distinguish between jurisdictional rules (that bear on the competence of courts to hear a claim) and non-jurisdictional mandatory rules (that do not). *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 516 (2006). The two rules differ in key respects. Chief among them: Courts must raise jurisdictional defects on their own initiative and may not overlook them even if the parties forfeit or waive challenges to them. *See Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). By contrast, mandatory claim-processing rules bind the courts only when properly asserted and not forfeited. *See Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam).

It's "usually a mistake" to "treat a statutory limit on our power as a statutory limit on our subject-matter jurisdiction," *United States v. Marshall*, 954 F.3d 823, 826 (6th Cir. 2020). A prescription limits our subject-matter jurisdiction only if "the Legislature clearly states that [the] prescription counts as jurisdictional." *Fort Bend County v. Davis*, 139 S. Ct. 1843, 1850 (2019).

Nothing in this administrative exhaustion requirement clearly limits our jurisdiction. It merely imposes a requirement on prisoners before they may move on their own behalf: They must "fully exhaust[] all administrative rights" or else they must wait for 30 days after the warden's "receipt of [their] request." 18 U.S.C. § 3582(c)(1)(A). That language neither "speak[s] in jurisdictional terms" nor "refer[s] in any way to the jurisdiction" of the courts. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982). In appearance, the provision looks like a claim-processing rule, and in operation it acts like one.

The Supreme Court's "interpretation of similar provisions" supports this view. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 168 (2010). This exhaustion requirement in material ways mimics Title VII's requirement, which is non-jurisdictional. *Fort Bend*, 139 S. Ct. at 1847, 1851–52. Title VII requires claimants to present their claims to the EEOC so that the agency may decide whether to take legal action on their behalf. *See id.* Only after the EEOC elects not to act—or after 180 days pass—may the claimant proceed to federal court. *Id.* So too here. And so too in other cases. *See Woodford v. Ngo*, 548 U.S. 81, 101 (2006) (holding non-jurisdictional the PLRA's administrative exhaustion requirement); *see also EPA v. EME Homer City Generation, L.P.*, 572 U.S. 489, 511–12 (2014) (holding non-jurisdictional the requirement that Clean Air Act plaintiffs object with reasonable specificity to a rule during that rule's public comment period); *Reed Elsevier*, 559 U.S. at 163–65 (holding non-jurisdictional the requirement that Copyright Act plaintiffs register their copyrights before bringing an infringement action).

Even though this exhaustion requirement does not implicate our subject-matter jurisdiction, it remains a mandatory condition. If the Director of the Bureau of Prisons does not move for compassionate release, a prisoner may take his claim to court only by moving for it on his own behalf. To do that, he must "fully exhaust[] all administrative rights to appeal" with the prison or wait 30 days after his first request to the prison. 18 U.S.C. § 3582(c)(1)(A).

When "properly invoked," mandatory claim-processing rules "must be enforced." *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13, 17 (2017). *Ross v. Blake* illustrates the point. 136 S. Ct. 1850 (2016). It rejected the idea that courts could create a "special circumstances" exception to the PLRA's exhaustion requirement. *Id.* at 1856. Because "Congress sets the rules" when it comes to statutory exhaustion requirements, the judiciary has a role to play in exception-crafting "only if Congress wants [it] to." *Id.* at 1857. Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions.

Nor can Alam show that exceptions to mandatory claim-processing rules—waiver or forfeiture—apply here. *See United States v. Cotton*, 535 U.S. 625, 630 (2002). The government timely objected to Alam's failure to exhaust at every available opportunity. And with good reason: It wants to implement an orderly system for reviewing compassionate-release applications, not one that incentivizes line jumping.

Alam pushes back that the exhaustion requirement is not mandatory because it does not contain language like "no action shall be brought" common to many mandatory claim-processing rules. But a sufficient explanation for a mandatory rule is not a necessary one. The language Congress used is quite mandatory anyway. It says a "court may not" grant relief without complying with the exhaustion requirement, 18 U.S.C. § 3582(c), and thus operates as an "unyielding procedural requirement[]," *United States v. Dowl*, 956 F.3d 904, 908 (6th Cir. 2020) (per curiam).

Alam adds that the exhaustion requirement in § 3582(c)(1)(A), unlike the § 1997e(a) exhaustion requirement contained in the PLRA, does not limit itself to administrative remedies "available" to prisoners. 42 U.S.C. § 1997e(a); *cf. Ross*, 136 S. Ct. at 1858–62. That, he says, shows Congress did not mean to require exhaustion in all compassionate-release cases. But there is a distinction between the statutes in this respect. Prisoners who seek compassionate release have the option to take their claim to federal court within 30 days, no matter the appeals available to them. Prisoners lack that luxury under the PLRA.

Alam notes that another provision, 18 U.S.C. § 3582(c)(2), authorizes prisoners to seek a sentence reduction without administrative exhaustion. He's right. But why that helps him remains unclear. The neighboring provision applies to prisoners who had their sentence set based on a subsequently lowered sentencing range. Courts will have little trouble determining whether prisoners are eligible for resentencing under that provision; they need only compare the prisoner's presentence report and current guidelines range. By contrast, eligibility for compassionate release turns on harder-to-parse considerations that benefit from greater ventilation. The absence of an exhaustion requirement in § 3582(c)(2) in truth hurts Alam's case. It shows that, when exhaustion is not needed, Congress knows how to omit it.

Alam insists that the backdrop to § 3582(c)(1)(A) suggests that Congress wished to make compassionate release available to a broader group of inmates. Prior to 2018, it is true, only the Director of the Bureau of Prisons could move for compassionate release. The First Step Act changed that. *See* First Step Act of 2018, § 603, Pub. L. No. 115-391, 132 Stat. 5239. It amended § 3582(c) to allow prisoners to move for compassionate release on their own behalf. No one contests that Congress made this change to increase access to compassionate release.

But it does not follow that Congress meant to excuse prisoners' failure to follow an exhaustion requirement that it deliberately added in the *same* amendment.

Noting that the Supreme Court has reserved the question whether "equitable exceptions" may "ever" apply to "mandatory claim-processing rules," *Fort Bend*, 139 S. Ct. at 1849 n.5 (quotation omitted), Alam requests that we innovate an equitable exception to this requirement to account for irreparable harm or futility. But the norm is to follow a mandatory rule unless the statutory exceptions apply. *See Hamer*, 138 S. Ct. at 17; *Manrique v. United States*, 137 S. Ct. 1266, 1271–72 (2017); *Ross*, 136 S. Ct. at 1856–57; *Eberhart*, 546 U.S. at 19 (per curiam).

*McKart v. United States*, 395 U.S. 185, 193–97 (1969), and *McCarthy v. Madigan*, 503 U.S. 140, 147–48 (1992), do not alter this conclusion. They involve judge-made exceptions to judge-made exhaustion doctrines. Those are birds of a different feather. *See Ross*, 136 S. Ct. at 1857. And Alam's reliance on *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000), hurts his cause. That case declined to read atextual exceptions into a statutory requirement. *Id.* at 11–14. And the Court has subsequently cited that case for the proposition that courts may not "add unwritten limits" into administrative exhaustion requirements. *Ross*, 136 S. Ct. at 1857.

Even if federal courts possessed a general power to create equitable carveouts to statutory exhaustion requirements, Alam does not show why an exception would make sense in the context of this statute. Remember that Congress made compassionate release available only to elderly prisoners and those with "extraordinary and compelling" reasons for release. 18 U.S.C. § 3582(c)(1)(A). For such prisoners, time usually will be of the essence. That would make nearly every prisoner eligible to invoke "irreparable harm" and eligible to jump the line of applications—making the process less fair, not more fair.

Appending a futility requirement does not improve things. How could we divine whether the Bureau of Prisons may wish to act on any given petition? And, in any event, why must we assume that the Bureau of Prisons' failure to act would render the act of waiting "futile"? Speed matters, yes. But accuracy matters too. Preventing prisoners from charging straight to federal court serves important purposes. It ensures that the prison administrators can prioritize the most

urgent claims. And it ensures that they can investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist. These are not interests we should lightly dismiss or re-prioritize.

Just one published decision of a federal court of appeals has faced a circumstance in which a prisoner failed to comply with the § 3582(c)(1)(A) administrative exhaustion requirement. That court found the omission a "glaring roadblock foreclosing compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). We agree.

Alam counters that this pandemic is unprecedented. Fair enough. Diseases with the morbidity of COVID-19 arise only occasionally. But it is not clear which way that cuts. By creating a compassionate-release option in the First Step Act, Congress gave inmates an option to seek early release on health grounds. The seriousness of COVID-19 and its spread in many prisons make it all the more imperative that the prisons have authority to process these applications fairly and with due regard for the seriousness of each inmate's risk. Free-floating exceptions to the rule, available to anyone willing to go to federal court first, will not help that cause. Recall that inmates can identify the ongoing public health crisis in their initial petition to their wardens. If that doesn't work, prisoners can pursue administrative review. If that also comes up short (or if 30 days pass), prisoners have the option to go to federal court. Thirty days hardly rises to the level of "an unreasonable or indefinite timeframe." *McCarthy*, 503 U.S. at 147.

Nor have the political branches been insensitive in responding to the COVID-19 pandemic. The CARES Act expands the power of the Bureau of Prisons to "place a prisoner in home confinement" as an alternative to compassionate release. Coronavirus Aid, Relief, and Economic Security Act (CARES Act), § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281 (Mar. 27, 2020). And the Attorney General has instructed the Bureau of Prisons to make the most of this expanded power by placing in home confinement "all inmates whom [the Bureau] deem[s] suitable candidates." *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19*, Office of the Attorney General (Apr. 3, 2020). The system is working as it should. A policy problem appeared, and policy solutions emerged.

One final question: What should we do with Alam's untimely motion? We conclude that we should dismiss it without prejudice. The Supreme Court has previously applied this remedy in cases where parties filed in court before waiting out a statutorily required non-adversarial window. *See, e.g.*, *Hallstrom v. Tillamook County*, 493 U.S. 20, 33 (1989). We have done the same in cases where parties failed to exhaust. *See, e.g.*, *S.E. v. Grant Cty. Bd. of Educ.*, 544 F.3d 633, 642–43 (6th Cir. 2008); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). This approach comports with the general rule that we must strictly enforce statutory limits on the timing of a claim's filing. *See Carlisle v. United States*, 517 U.S. 416, 433 (1996). And it makes plenty of sense on its own terms. If (rather than dismissing) we sat on untimely compassionate release motions until the 30-day window ran its course, we could end up reviewing stale motions. Better to have Alam refile with the benefit of whatever additional insight he may have gleaned.

We affirm the dismissal of Alam's motion without prejudice.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 20-1298

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

WASEEM ALAM,

    Defendant - Appellant.

```
┌─────────────────────────┐
│         FILED           │
│      Jun 02, 2020       │
│  DEBORAH S. HUNT, Clerk │
└─────────────────────────┘
```

Before: SUTTON, COOK, and MURPHY, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the district court's dismissal of Waseem Alam's motion for compassion release under 18 U.S.C. § 3582(c)(1)(A) is AFFIRMED without prejudice.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk