UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

    Plaintiff,

v.                                        Case No. 15-20351

Waseem Alam,                   Sean F. Cox
                                                 United States District Court Judge

    Defendant.
_____/

## OPINION AND ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C § 3582(c) (ECF No. 339)

This is Waseem Alam's second motion for compassionate release. The Court denied his first motion because he had failed to exhaust his administrative remedies. Alam appealed, and the Sixth Circuit affirmed the Court's decision. Having now properly exhausted, Alam again seeks compassionate release from this Court.

For the reasons below, the Court will grant Alam's renewed motion, reduce his custodial sentence to time served, and impose a new term of supervised release equal to the undischarged portion of his custodial sentence. Alam shall be confined to his residence as a condition of his new term of supervised release.

### BACKGROUND

On June 11, 2015, a grand jury indicted Waseem Alam on one count of conspiracy to commit healthcare fraud, ("Count I"); one count of conspiracy to pay and receive kickbacks, ("Count II"); and three counts of structuring to avoid reporting requirements ("Counts III, IV, and V"). (ECF No. 1).

1

On March 22, 2016, Alam pleaded guilty to Count I and Count IV pursuant to a Rule 11 plea agreement. (ECF No. 149). In the Rule 11 plea agreement, Alam and the Government agreed that the applicable Sentencing Guidelines range was 135-168 months' imprisonment. (ECF No. 149, PageID 1047). Alam also agreed to the entry of a forfeiture money judgment against him in favor of the United States in the amount of $7,974,909.59. (ECF No. 149, PageID 1049).

On March 10, 2017, the Government moved for a downward departure based on Alam's substantial assistance in the prosecution and investigation of other fraudsters.  The Government requested a 40% reduction, which resulted in a range of 81 to 101 months. (ECF No. 242).

On March 24, 2017, the Court granted the Government's motion for a downward departure and sentenced Alam to 101 months' imprisonment, the top of the applicable range. (ECF No. 295 PageID 2282); (ECF No. 250). The Court also imposed fines in the aggregate amount of $500,000 and, consistent with the plea agreement, ordered restitution in the amount of $7,974,909.59. (ECF No. 250, PageID 1983). Alam did not appeal his sentence. According to the Bureau of Prison's ("BOP") website, Alam's expected release date is July 23, 2024.

On November 21, 2017, Alam filed a motion to vacate his sentence under 28 U.S.C. § 2255. (ECF No. 256).  The Court appointed counsel for Alam, and the § 2255 motion was fully briefed. (ECF Nos. 260, 262, 269, 284, 291, 301).  On January 9, 2020, the Court ordered a limited evidentiary hearing on Alam's § 2255 motion. (ECF No. 323).  This hearing was scheduled for April 8, 2020. (ECF No. 326).  Because Alam was expected to testify at this hearing, the BOP transferred him to FDC Milan, a federal prison near Detroit, Michigan.

Before the hearing could take place, however, COVID-19 hit the United States, the State of Michigan, and the City of Detroit.  On March 19, 2020, the Court adjourned the evidentiary

hearing under Administrative Order 20-AO-021, *In re: Court Operations Under the Exigent Circumstances Created by COVID-19 and Related Coronavirus Health Conditions*.

On April 4, 2020, Alam filed his first emergency motion for compassionate release pursuant to 18 U.S.C. § 3582(c). (ECF No. 331). He argued that, because of his age (65 years old) and his health conditions (including diabetes, coronary artery disease, obesity, sleep apnea, hypertension, and many other ailments), he is "at extremely high risk for COVID-19." (ECF No. 331, PageID 2534-2535). He asked the Court to release him from FDC Milan—which he believes is facing or will soon face "a wave" of COVID-19 infections—and allow him to serve the remainder of his sentence on home confinement.

On April 7, 2020, the Government filed its response to Alam's first motion for compassionate release, opposing his release. (ECF No. 333). The Government argued that Alam had not exhausted his administrative remedies, that the Court had no authority to "carve out an exception" to 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement, and that Alam had not demonstrated "extraordinary and compelling reasons" that warrant early release.

On April 8, 2020, the Court denied Alam's first motion without prejudice, reasoning that his failure to comply with § 3582(c)(1)(A)'s exhaustion requirement barred his motion. (ECF No. 334); *United States v. Alam*, -- F.Supp.3d --, 2020 WL 1703881 at *2-3 (E.D. Mich. April 8, 2020). Alam immediately appealed that order. (ECF No. 335).

While Alam's appeal was pending, he filed his now-pending second motion for compassionate release. (ECF No. 339). In it, Alam states that he has now complied with § 3582(c)(1)(A)'s exhaustion requirement and renews his arguments for why compassionate release is appropriate.

On June 2, 2020, the Sixth Circuit issued its opinion in Alam's appeal, affirming the Court's denial of his first compassionate release motion as unexhausted. (ECF No. 343); *United States v. Alam*, 960 F.3d 831 (6th Cir. June 2, 2020).

Also on June 2, 2020, the Government responded to Alam's second motion for compassionate release, arguing that, even though the Sixth Circuit issued its decision hours earlier, the Court still lacked jurisdiction to grant Alam's motion until the Sixth Circuit issued its mandate.

As to the merits of Alam's motion, the Government concedes that Alam's medical conditions, coupled with the risks of COVID-19, present "extraordinary and compelling reasons" for his release. But the Government argues that Alam's motion should be denied because (1) he is a danger to the community, and (2) the 18 U.S.C. § 3553(a) factors do not support a reduction of Alam's sentence.

On June 19, 2020, the Court entered a memorandum order, finding that it could not consider the merits of Alam's motion until the Sixth Circuit issued its mandate. (ECF No. 347). On June 24, the Sixth Circuit issued its mandate, returning jurisdiction to this Court. (ECF No. 348).

On July 22, 2020, the Court held a hearing on Alam's motion, using Zoom videoconference technology.

## ANALYSIS

Under 18 U.S.C. § 3582(c)(1)(A), the Court may reduce an imposed sentence if it determines that "extraordinary and compelling reasons warrant such a reduction." In addition to this finding, the Court must also consider the sentencing factors described in 18 U.S.C. § 3553(a) and decide if a sentence reduction would be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

4

U.S. Sentencing Guidelines Manual § 1B1.13 (U.S. Sentencing Comm'n 2018) is the "applicable policy statement" with which the Court must comply when considering Alam's request for compassionate release. 18 U.S.C. § 3582(c)(1)(A). Section 1B1.13 explains that a defendant must "not [be] a danger to the safety of any other person or to the community" under 18 U.S.C. § 3142(g) and must fit within at least one of four categories of "extraordinary and compelling reasons." Those categories are: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons." The category of "Other Reasons" requires the BOP to determine that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons" outlined in the other three categories. U.S. Sentencing Guidelines Manual § 1B1.13 cmt. n.1(D). The BOP has released Program Statement 5050.50 to guide its determination of extraordinary and compelling circumstances under this fourth category. Federal Bureau of Prisons, U.S. Department of Justice, Program Statement 5050.50: Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (2019).

"In all, a defendant seeking compassionate release must present extraordinary and compelling circumstances, must have § 3553(a)'s sentencing factors weigh in his favor, must not be a threat to others as determined by § 3142(g), and must fit within one of the four categories in § 1B.13 of the Sentencing Guidelines." *United States v. Shah*, 2020 WL 1934930 at *1 (E.D. Mich. April 22, 2020) (citations omitted).

### A.   Extraordinary and Compelling Reasons / U.S.S.G. § 1B1.13

The First Step Act effectively transferred the power to determine whether "extraordinary and compelling reasons" exist from the BOP to the federal courts. *See, generally, United States v.*

5

*Young*, 2020 WL 1047815 at *3-6 (M.D. Tenn. March 4, 2020) (describing changes in the statutory and regulatory standards that governed compassionate release motions from 1984 to the present). Before the First Step Act, the BOP made that call by applying a standard articulated by the United States Sentencing Commission in an Application Note to U.S.S.G. § 1B1.13. *Id*. Today, that finding is not predicated on either that Application Note or the BOP's judgment because the First Step Act gave the judiciary "the authority to reduce a prisoner's sentence upon the [C]ourt's independent finding of extraordinary or compelling reasons." *Id*. at *6 (collecting cases). To make this finding, the Court may still look to § 1B1.13's Application Note for guidance in applying this "vague standard." *United States v. Ebbers*, -- F.Supp.3d --, 2020 WL 91399 at *2 (S.D.N.Y. Jan. 8, 2020); *see also United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019).[1]

To begin, § 1B1.13's Application Note provides certain circumstances in which a prisoner's medical condition constitutes an extraordinary and compelling reason for a sentence reduction:

> **1. Extraordinary and Compelling Reasons.--**Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> **(A) Medical Condition of the Defendant.**
>
> **(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

---

[1] Whether the Application Note to § 1B1.13 restricts the Court's analysis of "extraordinary and compelling reasons" or is merely guidance is not dispositive of this motion, or likely of any other similar motion. Even if § 1B1.13 is only guidance, the defendant's release must still be consistent with that section under 18 U.S.C. § 3582(c)(1)(A) (requiring a sentence reduction to be "consistent with applicable policy statements issued by the Sentencing Commission.")

    **(ii)**  The defendant is

      **(I)**  suffering from a serious physical or medical condition,

      **(II)**  suffering from a serious functional or cognitive impairment, or

      **(III)**  experiencing deteriorating physical or mental health because of the aging process,

  that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, comment. (n.1) (2018).

  Alam's medical conditions are numerous and severe. According to his Pre-Sentence Report, he has poorly controlled diabetes, "coronary artery disease, recurring joint pain, obesity, severe anxiety disorder, fatigue, bladder control issues, benign prostatic hyperplasia (an enlarged prostate), obstructive sleep apnea, osteoarthritis, peripheral neuropathy, depression, cervical radiculopathy (nerve compression in back, causing pain) nephrolithiasis (kidney stones), and hypertension." PSR ¶ 44. According to the Centers for Disease Control, several of Alam's conditions increase his risk of severe illness from COVID-19. *People with Certain Medical Conditions*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed July 22, 2020) (listing obesity, coronary artery disease, and diabetes as conditions that place people at an increased list and hypertension as a condition that might place people at an increased risk). And Alam's age is another factor that increases his risk of developing severe illness from COVID-19. *Older Adults*, CENTERS FOR DISEASE CONTROL, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html. (last accessed July 22, 2020).

7

The Government concedes that Alam's medical conditions qualify as an extraordinary and compelling reason for his release. (ECF No. 341, PageID 2656).[2] Thus, there is no dispute that Alam has established "extraordinary and compelling reasons" or that his release would be consistent with the applicable policy statement issued by the Sentencing Commission. Moreover, the Court finds that Alam has presented extraordinary and compelling reasons that justify compassionate release and that Alam's release would be consistent with the applicable policy statements issued by the Sentencing Commission. "[T]he heightened risk of severe illness or death faced by [Alam] if or when he inevitably comes in contact with the virus…creates the extraordinary and compelling circumstances here." *United States v. Rahim*, 2020 WL 2604857 at *3 (E.D. Mich. May 21, 2020).

The Court's conclusion on this issue is consistent with the conclusions of other courts in this district that have held that extraordinary and compelling reasons warrant the compassionate release of defendants like Alam during the COVID-19 pandemic. *See Rahim*, 2020 WL 2604857 at *2 (finding extraordinary and compelling reasons warranting compassionate release for a sixty-seven-year-old defendant with medical conditions including diabetes, hypertension, and coronary artery disease serving a sentence for health care fraud); *United States v. Saad*, 2020 WL 2251808 at *6 (E.D. Mich. May 5, 2020) (finding extraordinary and compelling reasons warranting compassionate release for seventy-one-year-old defendant with serious underlying health conditions including chronic kidney disease, hypertension, and diabetes serving sentence for non-violent conviction); *United States v. Pomante*, 2020 WL 2513095 at *7 (finding extraordinary and

---

[2] The Government notes that Alam "has not presented medical records to substantiate the assertions that he suffers from these medical conditions." However, at the hearing, the Government stated that it had verified Alam's medical conditions. There is no doubt that Alam suffers from the medical conditions described above.

8

compelling reasons warranting compassionate release for sixty-nine-year-old defendant with serious underlying pre-existing medical conditions, including chronic kidney disease, hypertension, obesity, and diabetes serving sentence for non-violent conviction); *United States v. Al-Jumail*, 2020 WL 2395224 at *1 (E.D. Mich. May 12, 2020) (finding extraordinary and compelling reasons warranting compassionate release for sixty-year-old defendant with serious underlying health conditions including coronary artery disease, diabetes, and retinal disease serving sentence for non-violent conviction); *United States v. Reddy*, 2020 WL 2320093 at *1 (E.D. Mich. May 11, 2020) (finding extraordinary and compelling reasons warranting compassionate release for seventy-three-year-old defendant with serious underlying health conditions including diabetes, hypertension, and various orthopedic and pain-related problems serving sentence for non-violent conviction).

### B. Alam's Threat under § 3142(g)

18 U.S.C. § 3142(g) outlines factors to be considered when determining whether a defendant presents a danger to "the safety of any other person and the community:"

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g). The Government argues that, applying these factors, Alam is a danger to the community. The Court disagrees. Alam was convicted of non-violent, fraud-based offenses. Aside from this case, Alam has no criminal history, violent or otherwise. He remained on bond during the pendency of his case, had no bond violations, and was allowed to self-report to prison. He is in his mid-sixties, and has a host of medical issues. Based on the Court's intimate knowledge of this case and Alam's characteristics, there is no indication that Alam's release would threaten the community.

The Government's argument on this issue appears to rest on the scope of Alam's Medicare fraud and the risk that he would engage in further fraud if released. This argument is misplaced. Alam perpetuated his fraud only because of his statuses as a licensed doctor and an approved Medicare biller. As a result of his conviction, Alam's medical license has been revoked[3] and the

---

[3] A search of the State of Michigan's Department of Licensing and Regulatory Affairs (commonly known as "LARA") database confirms that Alam's medical license has been revoked. https://aca-prod.accela.com/MILARA/GeneralProperty/LicenseeDetail.aspx?LicenseeNumber=4301072403&LicenseeType=Medical Doctor (last accessed July 23, 2020); *see also In the Matter of Waseem Alam, M.D., License No. 43-01-072403*, File No. 43-15-137899, State of Michigan, Department of Licensing and Regulatory Affairs, Bureau of Professional Licensing, Board of Medicine, Disciplinary Subcommittee, Final Order (February 12, 2018) (revoking Alam's medical license.)

10

Court seriously doubts that he could ever again submit a bill to Medicare. Thus, even if he wanted to, Alam could not replicate his crime of conviction. And there is no indication that he is likely to commit any other general type of fraud or crime. Thus, the Court concludes that Alam is not a threat to the community under 18 U.S.C. § 3142(g).

### C. 18 U.S.C. § 3553(a) factors

To gain compassionate release, the 18 U.S.C. § 3553(a) sentencing factors must weigh in Alam's favor.

(a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2) the need for the sentence imposed—

      (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

      (B) to afford adequate deterrence to criminal conduct;

      (C) to protect the public from further crimes of the defendant; and

      (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   (3) the kinds of sentences available;

   (4) the kinds of sentence and the sentencing range established for—

      (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

         (i)   issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments

      have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and that,

  (ii) except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or

 (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement—

 (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

 (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.1

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.S.C. § 3553(a).

 At sentencing, Alam's Guidelines range was 135 to 168 months' imprisonment but, because of his substantial assistance in other prosecutions, the Government moved for a 40% reduction. The Court granted this motion, which resulted in a range of 81 to 101 months imprisonment. After considering the § 3553(a) factors, the Court imposed a 101-month sentence.

 While the sentence imposed was just, the Court finds that consideration of the factors set forth in § 3553(a) favor compassionate release. As the Government notes, the nature and

12

circumstances of Alam's offenses were serious. But the Court finds that releasing Alam to home confinement after he has served a significant amount of time in prison would be consistent with the other § 3553(a) factors, and that those factors outweigh the seriousness-of-offense factor.

Alam's most relevant personal characteristic is his health and vulnerability to COVID-19. As described above, Alam has several serious medical conditions that increase his risk of severe illness or death from COVID-19. Moreover, the Court is confident that the length of the prison sentence that Alam has already served, plus additional time on home confinement and supervised release, reflects the seriousness of his offense, promotes respect for the law, provides just punishment, and affords adequate deterrence to criminal conduct. Given Alam's lack of prior criminal history, age, and health, there is no indication that Alam's release will endanger the public or encourage him to commit further crimes. And Alam's release will not produce unwarranted sentencing disparities because it accounts for his unique medical conditions in light of the COVID-19 pandemic. Thus, the Court concludes that granting compassionate release to Alam would be consistent with and supported by the § 3553(a) factors.

## CONCLUSION AND ORDER

For the reasons stated above, **IT IS HEREBY ORDERED** that Alam's Renewed Emergency Motion for Compassionate Release Pursuant to 18 U.S.C. § 3582(c) (ECF No. 339) is **GRANTED**. The custodial portion of Alam's sentence is reduced to time served, and the Court imposes a new term of supervised release equal to the unserved portion of the original term of imprisonment (as calculated by the BOP). Following the completion of this newly imposed term of supervised release, Alam shall begin serving the three-year term of supervised release that the Court imposed in its original Judgment.

As a condition of Alam's newly imposed term of supervised release, he shall participate in the Location Monitoring Program utilizing technology recommended by the Probation Department for a minimum of 12 months and abide by all the requirements of the Program. During this term, Alam shall be restricted to his residence and shall not leave his residence other than for medical appointments and appointments with counsel and under such restrictions as the Probation Department deems necessary. After this term, the Probation Department will notify the Court to determine if the Location Monitoring Program and home confinement needs to be continued.

In addition to the home confinement described above, the newly imposed term of supervised release shall include all mandatory, standard, and special conditions included in Alam's original term of supervised release, as described in the Court's original Judgment (ECF No. 250, PageID 1980-1982). Defendant's original sentence remains unchanged in all other respects.

Finally, upon release, Alam must self-quarantine at home for 14 days.

**IT IS SO ORDERED**.

                                              s/Sean F. Cox
                                              Sean F. Cox
                                              United States District Judge

Dated: July 23, 2020